UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHY L. ROGERS-CARROLL,

                        Plaintiff,                1:24-cv-322
                                                          (ECC/DJS)
v.

MARLBORO CENTRAL SCHOOL DISTRICT;
MICHAEL BAKATSIAS, SUPT.
TECHNOLOGY-PERSONNEL; MICHAEL
RYDELL, SUPERINTENDENT OF SCHOOLS,

                        Defendants.
_____

Kathy L. Rogers-Carroll, *pro se Plaintiff*
Chelsea Weisbord, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

      On March 6, 2024, pro se Plaintiff Kathy Rogers-Carroll filed this action alleging that Defendants Marlboro Central School District (the District), Michael Bakatsias, and Michael Rydell violated the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, as amended (ADA), and that Defendant Bakatsias slandered her, in violation of state defamation law.  Presently before the Court is Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 13.  The motion is fully briefed.  Dkt. Nos. 13, 18, 19.  For the following reasons, the motion to dismiss is granted in part and denied in part.

I.     **FACTS**[1]

Plaintiff has been employed by the District as a special education teacher since September 3, 2002 and by the New Paltz Central School District (New Paltz) as a track coach since March 3, 2024. Complaint (Compl.) ¶ 1, Dkt. No. 1.[2]

On December 27, 2022, Plaintiff had back surgery for a herniated disc, and she experienced complications during her recovery. Compl. ¶¶ 2, 4. District employees receive six sick days, and a committee managed by the District (the committee) could give employees additional days from a sick bank (sick bank days). *Id*. ¶¶ 4, 7. After Plaintiff's surgery, she submitted three requests for sick bank days with supporting medical documentation. *Id*. ¶¶ 3-5. The Complaint focuses on her last request submitted on February 27, 2023 (the leave request). "As per her doctor's recommendation and latest note, Plaintiff was scheduled to return to work on March 27, 2023." *Id*. ¶ 5.

While recovering from surgery, Plaintiff coached for New Paltz in a "limited capacity." Compl. ¶ 13. New Paltz allowed her to work for 1-2 hours per day, alternate between sitting and standing, avoid areas where collisions were more likely to occur, and receive help from two volunteer coaches and a co-coach. *Id*.

On March 10, 2023, the committee denied Plaintiff's leave request, explaining that Plaintiff had not met the requirement that an employee "suffered a disabling illness or accident." Compl.

---

[1] These facts are drawn from the Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Citations to the factual allegations in the addendum to the Complaint are to paragraph numbers (¶), while citations to the form Complaint are to section symbols (§).

¶ 7; Dkt. No. 13-3.[3] The denial relied on the fact that Plaintiff was working for New Paltz, but not reporting to work at the District. Compl. ¶ 7; Dkt. No. 13-3. Defendant Michael Bakatsias, Assistant Superintendent of Personnel for the District, called Plaintiff to tell her that she would not be paid if she did not return to work. *Id*. ¶¶ 7, 8. He also told Plaintiff that she was "lying," "fraudulently requesting sick bank time," and that her request was denied "because she was in fact not disabled." *Id*. According to Plaintiff, "[t]his inaccurate and slanderous portrayal of [Plaintiff's] very serious condition . . . misinformed the sick bank committee and biased their decision." *Id*. ¶ 7. Defendant Bakatsias and the principal of Marlboro High School "consistently conveyed as part of an informal 'policy' that the District would not allow part-time work, return to work with restrictions, or the use of assistive devices." *Id.* ¶ 11. Defendant Bakatsias also "repeatedly insisted that Plaintiff's return to work be 'full time with no restrictions.'" *Id*. ¶ 14 (internal quotation in complaint).

After denying Plaintiff's leave request, the District docked her pay approximately $5,957, the amount of pay for the nine days between Plaintiff's February 27th request and March 10th.[4] Compl. ¶ 7. After Plaintiff's pay was docked, she "pleaded with her doctor to write her a note to return to work, which he reluctantly agreed to do." *Id.* ¶ 9. "This note followed Mr. Bakatsias' refusal to accept the first letter from Plaintiff's neurosurgeon, which stated clearly the dangers Plaintiff faced if she returned, and the directive that she could not work in the school building

---

[3] "[D]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered" for purposes of a motion to dismiss. *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (citation omitted). The Plaintiff refers to the letter from the committee throughout the Complaint, and it may therefore be considered for purposes of this motion to dismiss.

[4] Plaintiff estimates that the resulting loss is $30,000 over the course of her retirement because this will lower the final three years of pay used to calculate her retirement. Compl. ¶ 17.

beyond 1-2 hours a day . . . ." *Id.* ¶ 9. "As part of Plaintiff's recovery, Plaintiff's doctor permitted her to . . . work as tolerated for 1-2 hours at a time, with the ability to alternate sitting or standing." *Id.* ¶ 10.

Plaintiff returned to work on March 12th full-time with no restrictions or assistive devices, and she "experienced severe additional pain and suffering as well as great risk to her health and safety." Compl. ¶¶ 14-15.

On April 20, 2023, Plaintiff's brother-in-law died unexpectedly, and Plaintiff left work early. Compl. ¶ 19. The next day, the principal asked Plaintiff, "Where did you go yesterday; someone reported that you didn't go home?" *Id.* On April 24, 2023, the District denied Plaintiff's request for a bereavement day, and Defendant Rydell told her, "That's what personal days are for . . . ." *Id.* ¶ 20. The District's bereavement policy gave Defendant Rydell the discretion to "allow bereavement leave for persons other than those enumerated in this section." *Id.* ¶ 19.

For years, Plaintiff included her coaching and summer employment titles on her District email signature block. Compl. ¶ 22. On May 24, 2023, Defendant Rydell directed Plaintiff to remove "'what appears to be external employment titles'" from her email signature block at her "'earliest convenience.'" *Id.* This email was sent "to Plaintiff personally, rather than to all teachers collectively, suggesting it was a targeted reprisal." *Id.*

On May 26, 2023, Plaintiff stopped working, and on June 6th, she had emergency bi-level anterior cervical discectomy and fusion neck surgery. *Id.* ¶ 15.

On August 17, 2023, Plaintiff filed a complaint with the New York State Division of Human Rights (SDHR) alleging disability discrimination. Compl. ¶ 18; Dkt. No. 19-2.

On October 10, 2023, Plaintiff attended a "virtual informal hearing" at 10:00 am that took longer than the 30 minutes she expected. Compl. ¶ 21. Although the hearing was less than two

4

hours, and 40 minutes of that time was Plaintiff's lunch break, the District docked Plaintiff half of a personal day (3.5 hours) because she did not follow "the proper procedure to request leave for personal matters." *Id*. In addition, the District issued a written admonishment that was placed in her personnel file. *Id.*

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

"[W]here, as here, a plaintiff is proceeding pro se, the complaint must be considered under a more lenient standard than that accorded 'formal pleadings drafted by lawyers.'" *Harrison v. New York*, 95 F. Supp. 3d 293, 313 (E.D.N.Y. 2015) (citation omitted). The Complaint must also be construed liberally "to raise the strongest arguments that it suggests." *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80 (2d Cir. 2020) (citation omitted). "Nonetheless, a pro se

complaint must state a plausible claim for relief." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

## III.  DISCUSSION

Liberally construed, Plaintiff's Complaint alleges ADA failure-to-accommodate and retaliation claims against all of the Defendants as well as a slander claim against Defendant Bakatsias.

### A.  ADA Claims

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees," as well as "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  A prima facie discrimination claim requires the plaintiff to show that: "(1) the defendant is covered by the ADA; (2) [the] plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) [the] plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) [the] plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 486 (S.D.N.Y. 2017) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).  A "plaintiff alleging disability discrimination 'is not required to plead a prima facie case . . . to defeat a motion to dismiss,'" and she "'need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage.'" *Id.* at 486–87 (quoting *Dooley v. JetBlue Airways Corp.*, 636 Fed. App'x 16, 21 (2d Cir. 2015) (summary order)).  *See also Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (summary order) ("To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, *inter alia*, that she suffered [an] adverse employment action because of [her] disability.").To survive a motion to dismiss, a plaintiff "need only allege

6

facts to support [the plaintiff's] prima facie case." *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 32 (2d Cir. 2019). In addition, "a plaintiff alleging disability discrimination 'is not required to plead a prima facie case . . . to defeat a motion to dismiss,' and 'need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage.'" *Id.* at 486–87 (quoting *Dooley*, 636 Fed. App'x at 21).

### 1. Claims Against Individuals

As Plaintiff recognizes, individuals are not liable under the ADA. Pl. Mem. at 8, Dkt. No. 18; *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (Title II of the ADA does not "provide[] for individual capacity suits against state officials"); *Rubeor v. Town of Wright*, 191 F. Supp. 3d 198, 208 (N.D.N.Y. 2016) ("Claims against individual defendants in their official capacities are really just claims against the municipality and, thus, are redundant when the municipality is also named as a defendant.") (quotations omitted). The ADA claims against Defendants Bakatsias and Rydell are therefore dismissed.

### 2. Failure to Accommodate

Defendants argue that Plaintiff's failure to accommodate claim should be dismissed because (1) Plaintiff's alleged impairment is not a disability under the ADA given that temporary impairments such as recovery from surgery are not disabilities, and Plaintiff has not alleged that her herniated disc affected any major life activities before her surgery and recovery, Def. Mem. at 25-27, Dkt. 13-4; and (2) the District did not have notice of Plaintiff's disability, *id.* at 27-28. Plaintiff responds that she was unable to perform several major life activities during her recovery, temporary impairment can qualify as a disability under the ADA, and the District had notice of her disability. *See* Pl. Mem. at 19-24.

A prima facie failure-to-accommodate claim requires the plaintiff to show: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [plaintiff's] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (quotation omitted). "The ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated," but "the ADA imposes liability for, *inter alia,* discriminatory refusal to undertake a feasible accommodation, not mere refusal to explore possible accommodations where, in the end, no accommodation was possible." *McBride*, 583 F.3d at 99, 100 (cleaned up).

### a. Physical or Mental Impairment Substantially Limiting One or More Major Life Activities

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Defendants argue that Plaintiff has not established that she suffers from a physical or mental impairment that substantially limits one or more of her major life activities.[5] Def. Mem. at 25-26. Plaintiff responds that that she pled specific major life activities affected by her herniated disc and back surgery. Pl. Mem. at 20-21.

"To establish a disability, a plaintiff must: (1) 'show that she suffers from a physical or mental impairment'; (2) 'identify the activity claimed to be impaired and establish that it constitutes a major life activity'; and (3) 'show that her impairment substantially limits the major life activity previously identified.'" *Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154,

---

[5] Defendants argue that Plaintiff has also not alleged sufficiently that she was regarded as disabled, Def. Mem. at 16-17, but Plaintiff does not appear to rely on that provision.

8

163 (S.D.N.Y. 2020) (quoting *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002)). A physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems."[6] 29 C.F.R. § 1630.2(h)(1). Major life activities are non-exclusively defined to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," in addition to "the operation of a major bodily function." 42 U.S.C. § 12102(2).

To qualify as a disability, an impairment must "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population"; but "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). "The term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." *Id.* § 1630.2(j)(1)(i). "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

Plaintiff alleges that her disability is "[d]isc herniation . . . radiating nerve pain through right leg, and severe back pain due to nerve impingement" and that the "disabling condition" required surgery resulting in complications including "reherniation of the disc and caused foot drop, continued pain and risk of permanent injury." Compl. § 4. She also alleges that as part of her recovery, her "doctor permitted her to work part time (work as tolerated for 1-2 hours at a time)

---

[6] The EEOC regulations implementing the ADA and its subsequent amendments, 29 C.F.R. § 1630.1, "are not binding," but "courts in the Second Circuit afford them significant deference." *Norman*, 492 F. Supp. 3d at 163 (citing *Francis v. City of Meriden*, 129 F.3d 281, 283 n.1 (2d Cir. 1997)).

with the ability to alternate sitting or standing." Compl. ¶ 10. Defendants do not argue that Plaintiff failed to sufficiently allege a physical impairment, Def. Mem. at 23-24, and Plaintiff's allegations are sufficient to allege a physical impairment.

However, Defendants argue that "Plaintiff does not plausibly allege limitations of her ability to perform any major life activities (substantial or otherwise) outside of the short duration of time in which she was recovering from her back surgery," and "[t]o the extent Plaintiff was substantially limited from performing any major life activities" during her recovery from surgery, "that is the type of temporary, non-chronic impairment of short duration that does not qualify as a disability under the ADA." Def. Mem. at 26.

Plaintiff responds that she alleged that the disc herniation substantially limited the major life activities of "walking, standing, and working," Pl. Mem. at 20 (citing Compl. ¶ 6), and "[a]s a result of complications arising from her back surgery for a herniated disc, she was no longer able "stand and walk for long periods, circulate throughout classrooms and hallways (sometimes packed with students), nor spend long periods of time working on a computer, and needed an assistive device," *id.*

"[F]or a disability to substantially limit the major life activity of working, the complaint must plausibly allege that the disability affected 'the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Johnson v. N.Y. State Police*, 659 F. Supp. 3d 237, 259 (N.D.N.Y. 2023) (quoting *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 137–38 (E.D.N.Y. 2015)).

"Under the expanded definition of 'disability' under the [ADA Amendments Act of 2008], which now covers impairments 'lasting or expected to last less than six months,' 28 C.F.R. § 35.108(d)(ix), a short-term injury *can* qualify as an actionable disability under the ADA."

10

*Hamilton v. Westchester Cnty.*, 3 F.4th 86, 93 (2d Cir. 2021). *See also Patterson v. Emblem Health Inc.*, No. 22-cv-2177, 2023 WL 5671531, at *5 (S.D.N.Y. Sept. 1, 2023) ("[an] actual disability claim under the ADA cannot fail solely because [a plaintiff] did not allege a permanent or chronic disability"). "In other words, a plaintiff's actual disability claim under the ADA does not fail solely because he failed to 'state that his [disability] will be permanent or chronic . . . [or] indicate the duration or long-term impact of his impairment such that the Court may infer that his injury was not temporary." *Hamilton*, 3 F.4th at 93.

Here, Plaintiff alleges that her job required "that she stand and walk for long periods, circulate throughout classrooms and hallways (sometimes packed with students), as well as repeatedly lean over students' desk as they work" and "spend[] long periods of time working on a computer." Compl. ¶ 6. She also alleges that these "requirements" were not "conducive to a safe and effective recovery from back surgery," and that she was "at risk of permanent disability if she was knocked in to or tripped and she was particularly vulnerable due to foot drop cause by lumbar disc herniation." *Id.* Although "[c]ourts have yet to establish the extent to which a plaintiff must allege . . . [her] claim that an impairment substantially limits a major life activity," *Laface v. E. Suffolk BOCES*, No. 18-cv-1314, 2020 WL 2489774, at *11 (E.D.N.Y. May 14, 2020), these references are sufficient to survive dismissal at the pleading stage.

In addition, contrary to Defendants' argument, Plaintiff's claims may not be dismissed solely because her doctor anticipated that her recovery would take three months. The Second Circuit has made clear that temporary non-chronic conditions, even ones shorter than six months, can be disabilities. Compl. ¶ 5; *see Hamilton*, 3 F.4th at 93 ("Hamilton's claim could not be dismissed as a matter of law simply because the injury causing these limitations was temporary.").

11

### b. Notice to Employer

Defendants further argue that Plaintiff has not alleged that the District had knowledge of a disability because her leave requests with doctor's notes regarding her recovery demonstrate that the District knew "that she was *injured*, not *disabled*." Def. Mem. at 28. Plaintiff responds that the Complaint sufficiently alleges that she provided notice of her disability and necessary accommodations because it alleges that she "provided supporting medical documentation with each extension request for her leave;" her doctor permitted her to "work as tolerated for 1-2 hours at a time), with the ability to alternate sitting or standing," and she provided a letter from her neurosurgeon stating the "dangers" she faced at the school and directing that "she could not work in the school building beyond 1-2 hours a day." Pl. Mem. at 23 (citing Compl. ¶¶ 2-5, 9, 10).

As explained above, for purposes of this motion Plaintiff has sufficiently alleged a disability under the ADA. Drawing all reasonable inferences from the facts pled by Plaintiff, Plaintiff has sufficiently alleged that the leave requests and doctor's notes submitted by Plaintiff—particularly the letter from Plaintiff's neurosurgeon explaining that she could not work at the school more than one to two hours each day—provided the District notice of the alleged disability. Compl. ¶ 3-5, 9.

### 3. Retaliation

Defendants argue that the retaliation claim should be dismissed because the allegedly adverse actions (1) occurred before Plaintiff filed her SDHR complaint, (2) are "the kind of trivial harm that" is not an adverse action; and/or (3) were the result of the application of neutral attendance policies. *See* Def. Mem. at 28-31. Plaintiff responds that the pre-SDHR complaint actions retaliated against her protected activity of seeking accommodations. She also asserts that the question of whether the application of the attendance policies was a legitimate non-

discriminatory reason is a factual question that cannot be resolved at the pleading stage.[7] *See* Pl. Mem. at 25-26.

To state a prima facie case of retaliation, Plaintiff must allege that (1) she "engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

### a.   Adverse Employment Action

"To qualify as an adverse employment action, the employer's action toward the plaintiff must be 'materially adverse' with respect to 'the terms and conditions of employment.'" *Davis v. N.Y.C Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). "An adverse employment action 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71–72 (2d Cir. 2019) (quoting *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002)). "Petty slights, minor annoyances, and simple lack of good manners" are insufficiently material to constitute adverse actions for a retaliation claim. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

---

[7] Plaintiff concedes that she cannot assert an ADA retaliation claim based solely on the District's failure to grant her accommodation requests. Pl. Mem. at 26.

Plaintiff alleges three adverse actions: (1) the April 24, 2023 denial of a bereavement day for her brother-in-law's funeral, Compl. ¶ 2; (2) the May 24, 2023 email from Defendant Rydell directing Plaintiff to change her email signature block, *id.* ¶ 22; and (3) the October 10, 2023 docking of one-half of a personal day and placement of a disciplinary letter in her personnel file for violating the District's attendance policy, *id.* ¶ 21.

Defendants argue that the denial of bereavement leave was not an adverse action because Plaintiff was instructed to use a personal day instead of a bereavement day. Def. Mem. at 29. Defendants also take the position that the email regarding the signature block was a "trivial harm" that does not rise to the level of an adverse action. Def. Mem. at 29-30. Plaintiff contends that Defendants took these actions in response to her request to extend her leave and her request for a reasonable accommodation. Pl. Mem. at 25.

Regarding the signature block email, Plaintiff does not address that action in her response, and she has not sufficiently alleged that a request to change the signature block on her email affected the terms of her employment or was a threat of disciplinary action. In addition, that email is not material enough to be an adverse action. *White*, 548 U.S. at 86. Accordingly, the Defendants' motion to dismiss is granted as to Plaintiff's ADA retaliation claim based on the May 24, 2023 email from Defendant Rydell.

However, the Court finds that Plaintiff has sufficiently alleged adverse action as to (1) the bereavement leave denial and (2) the docking of one-half day of pay and the filing of a disciplinary letter, for purposes of surviving Defendants' motion to dismiss.

### b. Causation

Defendants assert that "the application of neutral attendance policies is by definition a legitimate, nondiscriminatory reason for a particular action." Def. Mem. at 30. Plaintiff responds

14

that is a question of fact that should not be resolved as part of this motion to dismiss. Pl. Mem. at 26.

"[T]he ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019) (citations omitted). The burden for a plaintiff claiming discrimination is relatively low for a motion to dismiss. *See Rodriguez*, 2014 WL 6807834, at *6, ("To survive a motion to dismiss, a plaintiff is simply required to set forth factual circumstances from which a discriminatory motivation can be inferred.") (cleaned up). "As other courts within the Second Circuit have held, temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination." *Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 27 (D. Conn. 2011) (citations omitted).

Here, Plaintiff has sufficiently alleged causation for both of the alleged adverse employment actions involving her leave. The bereavement leave denial occurred less than two months after her leave request was denied. The docking of pay and disciplinary letter also occurred less than two months after Plaintiff filed her SDHR complaint. Although Defendants may be able to establish those actions were the result of the application of a neutral attendance policy, that is a question of fact that cannot be addressed at this stage of the litigation.[8]

**B.   Slander**

Defendants argue that the slander claim should be dismissed because Plaintiff did not comply with New York statutes requiring notice of claims. Def. Mem. at 18-20. Plaintiff argues

---

[8] Plaintiff acknowledges that the Superintendent had the discretion to grant her bereavement leave request, Compl. ¶ 20, but the application of the bereavement leave policy is a question of fact that cannot be resolved at this stage.

that those statutes do not apply, or in the alternative, that her SDHR complaint satisfies the requirements.  Pl. Mem. at 15-16.

New York law requires that a plaintiff filing damages claims against a school official or district under tort law provide notice of their claims before filing a complaint, and plead compliance with those requirements in any complaint.  N.Y. Educ. Law § 3813; *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013).  The deadline for the notice is three months after the conduct supporting the claim.  N.Y. Educ. Law § 3813.  These requirements apply to state court claims filed in federal court.  *Vincenzo v. Wallkill Cent. Sch. Dist.*, No. 121-cv-308 (GTS), 2022 WL 913094 at *12 (N.D.N.Y. Mar. 29, 2022) (collecting cases).

Plaintiff did not allege compliance with these requirements in the Complaint, but she argues that her SDHR complaint provided the required notice.  Dkt. No. 19-2.  As an initial matter, the SDHR complaint does not mention slander.  Even if it did, the SDHR complaint was filed on August 17, 2023, more than three months after the March 10, 2023 denial of her leave request that is related to her slander claim.

Plaintiff also argues that Defendant Bakatsias was not a "school official" covered by § 3813(1), but even if she were correct, Defendant Bakatsias is a "school employee" who was entitled to 90-day notice, N.Y. Educ. Law § 3813(2); Gen. Mun. Law § 50-e, and the SDHR complaint was filed more than 90 days after the alleged conduct.  Accordingly, Plaintiff's slander claim against Defendant Bakatsias is dismissed.

## IV.     Leave to Amend

Plaintiff "respectfully requests leave to file an amended complaint to address any deficiencies identified by the Court."  Pl. Mem. at 2.  Ordinarily, a court "should not dismiss a pro se complaint without granting leave to amend at least once when a liberal reading of the complaint

16

gives any indication that a valid claim might be stated." *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 118 (N.D.N.Y. 2023) (internal quotations omitted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999)); *see also* Fed. R. Riv. P. 15(a)(2) ("The court should freely give leave when justice so requires."). But leave to amend is properly denied when the problem with a claim is substantive, and better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Here, as Plaintiff recognizes, she cannot bring ADA claims against the Individual Defendants in their individual or official capacities, and amendment of those claims would be futile. Pl. Mem. at 8. Plaintiff is therefore not granted leave to amend those claims. Regarding the ADA retaliation claim relying on the email directing Plaintiff to change her signature block, Plaintiff's request for leave to amend is granted to the extent Plaintiff is not attempting to revive the dismissed ADA claims against the Individual Defendants. Furthermore, Plaintiff's request for leave to amend her slander claim is granted only to the extent she can plead compliance with the state notice requirements.

If Plaintiff seeks to amend, Plaintiff must file an amended complaint within twenty-one (21) days of this Order. Plaintiff is reminded that the amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks and citations omitted)). Any amended complaint should contain all factual allegations relevant to Plaintiff's claims.

## V.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss under Rule 12(b)(6), Dkt. No. 13, is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendants' motion is **GRANTED** to the extent that the ADA claims against Defendants Rydell and Bakatsias in their official and individual capacities are **DISMISSED** with prejudice; and it is further

**ORDERED** that Defendants' motion is **GRANTED** to the extent that the slander claim against Defendant Bakatsias is **DISMISSED** without prejudice; and it is further

**ORDERED** that Defendants' motion is **GRANTED** to the extent that the ADA retaliation claim premised on the May 24, 2023 email from Defendant Rydell directing Plaintiff to change her signature block is **DISMISSED** without prejudice; and it is further

**ORDERED** that Defendants' motion to dismiss is in all other respects **DENIED**.

    **IT IS SO ORDERED.**


Dated: July 8, 2025

                                             _____
                                             Elizabeth C. Coombe
                                             U.S. District Judge